UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LAMONT PETTUS, et al.,  REPORT AND
                           Plaintiff,  RECOMMENDATION
              - against -
CITY OF NEW YORK, et al.,  10-CV-1442 (CBA) (JO)
                           Defendants.
----------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiff Lamont Pettus, acting *pro se*, filed the instant suit against federal probation officer Karen Hill ("Hill"), among others, alleging that Hill violated his civil rights through her involvement in his arrests on both state and federal charges arising from a shooting he says he did not commit. *See* Docket Entry ("DE") 1 ("Complaint"). On December 17, 2010, Hill moved to dismiss the claims asserted against her. DE 40. Upon a referral from the Honorable Carol B. Amon, Chief United States District Judge, I now make this report, and for the reasons set forth below, respectfully recommend that the court grant the motion to dismiss with prejudice.

I.    Background

      The following facts are taking from the Complaint, the documents it incorporates by reference, and judicial records of which the court may take notice, all construed in the light most favorable to the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

      Moreover, for purposes of resolving the instant motion, I also deem the Complaint – which specifically mentions Hill only a handful of times – to include specific factual assertions about Hill's role in his arrest that Pettus made for the first time in his submissions in opposition to the instant motion. *See*, *e.g.*, DE 39 (Pettus Opposition) ("Opp.") at 1 (accusing Hill of fabricating a witness statement). To the extent the Complaint might be found defective only because of the

absence of such allegations in the pleading itself (as opposed to the motion briefing), it is more efficient to deem the facts to have been properly pleaded rather than await the filing of an amended complaint following a dismissal without prejudice. That is particularly true where, as here, the plaintiff is proceeding *pro se* and the movant has had an opportunity to address the significance of such extraneous factual allegations in her reply brief and has done so without making a procedural objection. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (explaining that a court generally "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (citations omitted); *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008) (requiring courts to construe *pro se* submissions liberally to raise the strongest arguments they suggest); *see also* DE 43 ("Reply") at 2-4 (movant's responses to facts first asserted in motion papers).

I note that in analyzing the instant motion to dismiss, I do not take into account or rely in any way on evidence adduced in discovery that supports the defendants' contention that the arrests at issue were properly based on probable cause. Although the court can and should consider such evidence in resolving the separate motion for summary judgment made by Hill's co-defendants, *see* DE 58 (Report and Recommendation urging grant of summary judgment in favor of all municipal defendants); it must exclude such evidence from consideration of the instant motion.

At the time of the events giving rise to this case, Pettus had twice been convicted of federal criminal offenses (involving escaping from custody and narcotics-related offenses, respectively) and was serving concurrent terms of supervised release. *See United States v. Pettus*, 04-CR-0996 (SLT) (MDG) ("*Pettus I*"), DE 20; *United States v. Pettus*, 07-CR-0020 (SLT) (RRM) ("*Pettus II*"), DE 4. Defendant Hill was the Probation Officer assigned to supervise Pettus. Complaint at 3;

*Pettus II*, DE 1. While serving those federal supervised release terms, Pettus was arrested on a new criminal charge. *See Pettus I*, DE 27; *Pettus II*, DE 1. On the basis of that arrest, on October 27, 2006, Hill filed a petition in this court accusing Pettus of four violations the conditions of his supervised release ("VOSR"). *Pettus I*, DE 27. Pettus admitted two of the violations at his arraignment on November 9, 2006. *Pettus I*, DE 28. Pettus had not yet been sentenced on the VOSR charges at the time of the events at issue in this case, but the court had scheduled a status conference for April 12, 2007. *See Pettus I*, DE 31 & DE 32.

Shortly before that scheduled appearance, on March 31, 2007, someone shot Aaron Floyd ("Floyd") through a closed apartment door, striking him in the lower back.[1] Defendant Joseph Lamassa ("Lamassa"), a New York City Police Officer, investigated the shooting, but failed to do so thoroughly, and went so far as to fabricate evidence against Pettus – including an allegation that Floyd had told him that Pettus was the assailant. Complaint at 3. Starting on April 1, 2007, the day after the shooting, Lamassa and his colleagues communicated with Hill about their investigation. Opp. Ex. C. On April 2, 2007, Hill filed a new petition seeking leave to add three new VOSR charges against Pettus based on his alleged shooting of Floyd. As a result of that petition, the court issued a warrant to arrest Pettus. *Pettus II*, DE 22.

On April 4, 2007, Pettus reported to Hill pursuant to the conditions of his federal supervised release. While he was at Hill's office, two New York City Police officers arrested Pettus on state charges related to the Floyd shooting. Complaint at 3-4. Pettus was arraigned in state court on the latter arrest the next day and later indicted by a state grand jury. *Id.* at 4. At his state court trial nearly a year later, Floyd testified that Pettus "was not the one who committed the

---

[1] The shooting victim's name is occasionally rendered as "Arron Floyd" (in papers not before the court for purposes of the instant motion, *see* DE 48-1 at 21-23), and in one instance as "Aaron George". *See* Complaint at 6.

crime" and also stated that he had so informed the prosecutor. *Id*. at 6.[2] After Floyd testified, the state prosecutor moved to dismiss the indictment for insufficient evidence. DE 18 at 1.

Following the dismissal of the state charges, Pettus was transferred to federal custody and detained on the federal VOSR charge. Complaint at 5. He was arraigned on April 24, 2008; following evidentiary hearing June 12 and 17, 2008, the court found Pettus guilty of the VOSR charges arising from the Floyd shooting. *See Pettus I*, DE 38 & DE 39; *Pettus II*, DE 12 & DE 14. The court then sentenced Pettus to 24 months in custody on one of those charges (assault), as well as shorter concurrent terms for the remaining violations (including those committed prior to the Floyd shooting). *Pettus I*, DE 39; *Pettus II*, DE 14. On January 1, 2009, Pettus was released from federal custody. Complaint at 6.

Pettus filed his Complaint on March 29, 2010, DE 1, and amended it slightly on July 30, 2011, DE 18.[3] The Complaint asserts two basic claims, for false arrest and malicious prosecution, against Hill. Complaint at 2.[4] On December 17, 2011, Hill filed the instant motion along with all of the parties' submissions relating to that motion. DE 39; DE 42; DE 43. In an order dated December 22, 2010, Chief Judge Amon referred Hill's motion to me.

---

[2] For purposes of analyzing the instant motion, I assume that the cited portion of the Complaint accurately characterizes Floyd's trial testimony. I note, however, that in opposing the municipal defendants' motion for summary judgment, Pettus submitted the relevant portion of the transcript of Floyd's trial testimony. As set forth in detail in my report on the summary judgment motion, *see* DE 58 at 12-13, Floyd simply did not exonerate Pettus; he merely disclaimed knowledge of who had shot him without contesting that he had provided information to the police that, in my view, plainly established probable cause to arrest Floyd for the shooting. DE 48-1 at 10-11.

[3] The amendment added no new claims. Instead, it replaced an allegation that Pettus "was found not guilty" at his state trial, DE 1 at 6, with an allegation that the trial ended when the prosecutor "moved to dismiss the indictment" because of "insufficient evidence to prosecute." DE 18 at 1.

[4] The court dismissed the claims against the City of New York and the public defender for failure to state a claim. DE 3. Pettus also sued the police and prosecutors involved in pursuing state criminal charges against him; I recently recommended that the court dismiss the latter defendants on summary judgment. *See* DE 51 (motion); DE 58 (Report and Recommendation).

II.   Discussion

   A.   The Applicable Legal Standards

   1.   Motion to Dismiss

In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court should consider the "legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citations omitted). The Complaint's assertions must state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)). When assessing the sufficiency of a complaint, the court must distinguish factual contentions, which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted, from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Although the court must assume the truth of the Complaint's factual assertions, it need not credit "a legal conclusion couched as a factual allegation." *Id.* at 1950. Even after *Twombly* and *Iqbal*, the court must construe a *pro se* plaintiff's complaint liberally. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

5

2. *Bivens* Claims

The Complaint purports to assert a claim against Hill under Title 42, United States Code, Section 1983, for the alleged violations of Pettus's constitutional rights. Such a claim cannot be asserted against Hill because she is a federal officer, rather than a state actor. *See Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005). Construing the Complaint liberally to raise the strongest arguments that it suggests, *see, e.g., Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006), I assume Pettus intends instead to assert a claim against Hill pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* "recognized as implicit in the rights guaranteed by the Fourth Amendment a cause of action for money damages against federal officials, sued in their individual capacities, who had allegedly violated those rights." *Dotson*, 398 F.3d at 166. In large measure, *Bivens* claims are analogous to claims brought under Section 1983 and are governed by the same standards. *See Hartman v. Moore*, 547 U.S. 250, 255 n. 2 (2006); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

B. Immunity

It is unclear from the pleadings whether Pettus intends to sue Hill in her personal or official capacity. Because Pettus seeks damages rather than injunctive relief, *see* Complaint at 6, Hill is entitled to sovereign immunity from suit in her official capacity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (affirming dismissal of *Bivens* claims against individual federal defendants in their official capacities on the ground of sovereign immunity).

To the extent Pettus seeks to sue Hill in her individual capacity, she asserts that she is entitled to absolute immunity, or in the alternative, qualified immunity. DE 42 (Memorandum of Law) ("Memo.") at 9-13, 17-19. The applicable standards with respect to immunity for federal

6

officials in *Bivens* actions are analogous to the standards developed for state officials in actions brought under Section 1983. *Butz v. Economou*, 438 U.S. 478, 500-501 (1978). The distinction between absolute and qualified immunity is an important one: absolute immunity, when applicable, "spares the official of any scrutiny of his motives," *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987), whereas "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To decide whether a particular government official is entitled to absolute immunity, courts take a "functional approach … which looks to the nature of the function performed, not the identity of the actor who performed it[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal citations and quotation marks omitted); *see Dorman*, 821 F.2d at 136; *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998). Generally, conduct "intimately associated with the judicial phase of the criminal process" is accorded absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

It appears that Hill is not entitled to absolute immunity because the conduct at issue in this case – seeking an arrest warrant and cooperating in an arrest by state police officers – is functionally akin to the actions of a police officer who seeks an arrest warrant. *See*, *e.g.*, *Scotto*, 143 F.3d at 112-13 (state parole officer who submitted a parole report not entitled to absolute immunity because function was more investigative, rather than prosecutorial); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445-46 (7th Cir. 1996) (state parole officer not entitled to absolute immunity for preparing a violation report recommending that plaintiff's supervised release be revoked); *see also Schiff v. Dorsey*, 877 F. Supp. 73, 79 n.2 (D. Conn. 1994) (conferring absolute immunity on federal

7

probation officer for filing a petition for probation action, yet noting that had the officer sought an arrest warrant, the analysis might have been different).

Because I conclude that Hill is not entitled to absolute immunity, I must consider her alternate claim of qualified immunity. As explained in greater detail below, Hill did not participate in the arrest of Pettus on state charges; as a result, she is entitled to qualified immunity on that aspect of the *Bivens* claim. Moreover, because the Complaint suffers from the flaws described below with respect to the false arrest or malicious prosecution claims arising from the federal VOSR charges, Hill is necessarily entitled to qualified immunity on those aspects of the *Bivens* claim as well. *See Pearson*, 555 U.S. at 231.

C.  False Arrest

A claim for false arrest brought under *Bivens*, resting on the Fourth Amendment right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under state law. *Evans v. Solomon*, 681 F. Supp. 2d 233, 240 (E.D.N.Y. 2010) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). To state a claim for false arrest under New York law, a plaintiff must establish four elements: first, that the defendant intended to confine the plaintiff; second, that the plaintiff was conscious of the confinement; third, that the plaintiff did not consent to the confinement; and finally that the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).[5]

The existence of probable cause is a complete defense to a claim of false arrest. *Weyant*, 101 F.3d at 852 (citations omitted). "Probable cause exists when, based on the totality of

---

[5] I assume that Pettus also intended to plead a false imprisonment claim. Adding that claim does not alter the analysis: "False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest." *Jenkins v. City of New York,* 478 F.3d 76, 88 (2d Cir. 2007) (citations omitted).

8

circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (citations and quotation marks omitted). Probable cause is assessed on an objective basis; whether it exists "'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer[s] at the time of the arrest.'" *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Where law enforcement officers are cooperating in an investigation, the knowledge of one officer is considered to be shared by all of the cooperating officers. *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (citing *Illinois v. Andreas,* 463 U.S. 765, 772 (1983)). "[P]robable cause to arrest can exist even when the arrest is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying upon that information." *Coyle v. Coyle*, 153 F. App'x 10, 12 (2d Cir. 2005) (citation omitted).

1. The State Arrest

Pettus appears to fault Hill for her involvement in his arrest on the state charges. *See* Complaint at 3. Broadly construing the Complaint, it could be read to assert a claim for false arrest against Hill for having informed the police officers of his whereabouts. Even with that construction, the Complaint fails to state a claim for false arrest against Hill based on his arrest on state criminal charges.

Principally, to the extent that Hill's involvement in the arrest on the state charges was passive, in that she did not actually effect the arrest, Hill cannot be liable for false arrest because the Complaint cannot reasonably be construed to allege that *she* intended to confine Pettus; rather,

9

Pettus alleges no more than that Hill aided the police officers who did intend to confine him by alerting those officers to his presence in her office. *See Williams v. Young*, 769 F. Supp. 2d 594, 602-03 (S.D.N.Y. 2011) (noting that the plaintiff did not have a false arrest claim because the defendant was not alleged to have participated in the plaintiff's arrest).

Moreover, to the extent that Hill can be said to have actively participated in the arrest by state officers, Pettus has not alleged that her actions violated his constitutional rights. While Pettus alleges that the police officers, including Lamassa, fabricated the evidence against him, Pettus does not allege that Hill was complicit in the fabrication of evidence during the time leading up to the state arrest. *See* Complaint at 3-4. To the contrary, Pettus affirmatively alleges that the New York City Police officers informed Hill about their investigation – an investigation in which, according to Pettus, Officer Lamassa fabricated evidence. Complaint at 3; Opp. Ex. C. Hill was privileged to rely on the information falsified by the state police officers so long as she had no reason to believe that the information was false. *See Savino*, 331 F.3d at 74 (officials cooperating in an investigation are permitted to rely on information they receive from their other officers in the course of an investigation); *Coyle*, 153 F. App'x at 12 ("[P]robable cause to arrest can exist even when the arrest is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying upon that information."). The allegation that Hill may have relied on false information when she aided in the state officers' arrest of Pettus therefore does not give rise to a constitutional claim.

2. The Federal Arrest

The Complaint faults Hill for seeking an arrest warrant on VOSR charges arising from the Floyd shooting. Complaint at 3. Specifically, Pettus argues that Hill "acted on false information to

issue the warrant and didn't investigate as a probation officer[.]" Opp. at 1. His contention does not support a cause of action for false arrest against Hill. Where, as here, an arrest is effectuated pursuant to a court-issued warrant, a false arrest claim is unavailable; rather, under such circumstances, a plaintiff "must rely on malicious prosecution" as the proper cause of action. *See Williams*, 769 F. Supp. 2d at 602 (quoting *Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007); citing *Broughton v. State*, 37 N.Y.2d 451, 457-58 (1975)). Moreover, because the court ultimately found Pettus guilty of all three of the VOSR charges for which Hill sought his arrest, *see Pettus I*, DE 39; *Pettus II*, DE 14, Pettus cannot now contend that Hill lacked probable cause to apply for the arrest warrant. *See Weyant*, 101 F.3d at 852 (explaining that a conviction is "conclusive evidence" that probable cause existed for an arrest).

      D.      <u>Malicious Prosecution</u>

Pettus asserts two principal allegations against Hill that may be read as claims for malicious prosecution. The first allegation relates to her role in "violating" Pettus and advocating for the issuance of a warrant for his arrest. Specifically, Pettus notes that "the [state charges] against the plaintiff … were dismissed and [Hill] continued to violate the plaintiff for a crime he didn't commit." Opp. at 1. Further, "Hill stepped way out of a professional standard and acted on personal feelings." Opp. at 2. The second allegation relates to Hill's conduct after the arrest warrant was issued; Pettus alleges that "Hill fabricated in her own handwriting a witness statement and the witness never took the stand at trial to support the probation violation[.]" *Id.* at 1. Neither theory suffices to state a claim for malicious prosecution.

      To state a *Bivens* claim for malicious prosecution a plaintiff must show:

(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for

11

commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.

*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citations omitted). Hill did not initiate the state criminal proceedings against Pettus; those were initiated and prosecuted exclusively by Hill's co-defendants. And while Hill did initiate the federal VOSR charges, the proceedings on those charges did not terminate in Pettus's favor: instead, the court convicted and sentenced Pettus on each VOSR charge for which Hill sought an arrest warrant.

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the court grant defendant Karen Hill's motion to dismiss the Complaint with prejudice for failure to state a claim.

IV.  Objections

I direct the defendant to serve a copy of this Report and Recommendation on the plaintiff by certified mail, and to file proof of service no later than August 31, 2011. Any objections to this Report and Recommendation must be filed on the electronic docket no later than September 14, 2011. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
August 26, 2011

                                                 /s/
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge